# NO. 22-1459

# United States Court of Appeals for the Eighth Circuit

Kevin Scott Karsjens, Kevin John DeVillion, Peter Gerard Lonergan, James Matthew Noyer, Sr., James John Rud, James Allen Barber, Craig Allen Bolte, Dennis Richard Steiner, Kaine Joseph Braun, Christopher John Thuringer, Kenny S. Daywitt, Bradley Wayne Foster, David Leroy Gamble, Brian K. Hausfeld, and all others similarly situated,

*Plaintiffs-Appellants,*

v.

Jodi Harpstead, Kevin Moser, Peter Puffer, Ann Zimmerman, Nancy Johnston and Jannine Hebert, in their individual and official capacities,

*Defendants-Appellees.*

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Case No. 11-cv-03659-DWF-TNL
Hon. Donovan W. Frank

————————————

## BRIEF OF PLAINTIFFS-APPELLANTS

————————————

GUSTAFSON GLUEK PLLC
Daniel E. Gustafson (#202241)
Karla M. Gluek (#238399)
David A. Goodwin (#386715)
Anthony J. Stauber (#401093)
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
(612) 333-8844
dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
dgoodwin@gustafsongluek.com
tstauber@gustafsongluek.com

*Attorneys for Plaintiffs-Appellants*

ATTORNEY GENERAL
STATE OF MINNESOTA
Keith Ellison
Aaron Winter (#0390914)
Scott H. Ikeda (#0386771)
Brandon Boese (#0396385)
Assistant Attorneys General
445 Minnesota Street, Suite 1400
St. Paul, MN 55101-2131
(651) 757-1453
aaron.winter@ag.state.mn.us
scott.ikeda@ag.state.mn.us
brandon.boese@ag.state.mn.us

*Attorneys for Defendants-Appellees*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

This case has a long procedural history regarding the constitutional rights of Plaintiffs-Appellants ("Plaintiffs"), who continue to be indefinitely civilly committed to prison-like facilities under the Minnesota Commitment and Treatment Act. Plaintiffs appeal the district court's dismissal of the remaining Counts, which allege that their commitment conditions are unconstitutionally punitive. After the district court dismissed these same counts before, this Court reversed that dismissal and directed the district court to review these the majority of these Counts under the *Bell v. Wolfish* standard. 441 U.S. 520 (1979).

The district court failed to follow this directive and erred by dismissing the remaining Counts as duplicative of the Counts I and II, which this Court had previously dismissed. But this Court had already found the remaining Counts were not previously decided when it remanded those Counts back originally. The district court also erred by finding that the remaining Counts failed under the *Bell* standard, despite uncontroverted evidence that continued confinement of Class Members was contrary to the treatment professionals' judgement and therefore unconstitutionally punitive under *Bell*. Finally, the district court erred by failing to find under the totality of the circumstances that the confinement conditions were punitive. The district court's dismissal should be reversed and the case remanded.

Plaintiffs request 30 minutes for oral argument.

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF THE ISSUES...........................................................2

STATEMENT OF THE CASE AND FACTS ...........................................3

   I.   Procedural Background ........................................................3

   II.  Factual Background ..............................................................9

SUMMARY OF ARGUMENT ...........................................................16

STANDARD OF REVIEW ..................................................................18

ARGUMENT ........................................................................................18

   I.   The District Court Erred in Holding That Plaintiffs' Count VI Was Previously Decided ...............................................................18

   II.  The Remaining Counts Are Not Duplicative of Any of Plaintiffs' Other Claims .......................................................22

   III.  The District Court Erred in Finding Count V and VI Failed Under *Bell* ...........................................................................26

        A.  The Professionals Testified that Individuals at MSOP Can and Should Be Treated in Less Restrictive Settings .........................................29

        B.  MSOP Has Restrained Plaintiffs and Class Members Beyond the Extent that Professionals Deemed Appropriate.......................................33

   IV.  The District Court Erred in Finding that Plaintiffs' Conditions of Confinement Were Not Unconstitutionally Punitive Considering the Totality of the Circumstances........................................36

   V.  The District Court Erred in Dismissing Plaintiffs' Inadequate Medical Care Claims .............................................................42

CONCLUSION .....................................................................................43

Appellate Case: 22-1459    Page: 3    Date Filed: 06/27/2022 Entry ID: 5171678

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*Beaulieu v. Ludeman*,
   690 F.3d 1017 (8th Cir. 2012) ................................................................24

*Bell v. Wolfish*,
   441 U.S. 520 (1979) ................................................................ *passim*

*Call v. Gomez*,
   535 N.W.2d 312 (Minn. 1995) ..............................................................35

*County of Sacramento v. Lewis*,
   523 U.S. 833 (1998).............................................................. 18, 19, 22

*Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth.*,
   339 F.3d 702 (8th Cir. 2003) ...............................................................18

*Falls v. Nesbitt*,
   766 F.2d 375 (8th Cir. 1992) ...............................................................18

*Finney v. Arkansas Bd. of Correction*,
   505 F.2d 194 (8th Cir. 1974) ............................................... 30, 36, 39

*In re Blodgett*,
   510 N.W.2d 910 (Minn. 1994) ...............................................................4

*Johnson v. Outboard Marine Corp.*,
   172 F.3d 531 (8th Cir. 1999) ...............................................................40

*Karsjens v. Jesson*,
   109 F.Supp.3d 1139 (2015) ..................................................................15

*Karsjens v. Lourey*,
   988 F.3d 1047 (8th Cir. 2021) ................................................ *passim*

*Karsjens v. Piper*,
   366 F.Supp.3d 974 (D. Minn. 2018)..................................................2, 22

ii

*Karsjens v. Piper,*
    845 F.3d 394 (8th Cir. 2017) ........................................................ *passim*

*Kingsley v. Hendrickson*,
    576 U.S. 389 (2015) ......................................................................... 27

*Martin v. White*,
    742 F.2d 469 (8th Cir. 1984) ........................................................ 38

*Matter of Civil Commitment of Kropp,*
    895 N.W.2d 647 (Minn. App. 2017) ............................................. 36

*Meecorp Cap. Markets, LLC v. PSC of Two Harbors, LLC,*
    776 F.3d 557 (8th Cir. 2015) ........................................................ 18

*Morris v. Zefferi*,
    601 F.3d 805 (8th Cir. 2010) ............................................... 2, 28, 37

*Revels v. Sanders*,
    519 F.3d 734 (8th Cir. 2008) ........................................................ 41

*Romeo v. Youngberg,*
    644 F.2d 147 (3d Cir.) ................................................................... 28

*Senty-Haugen v. Goodno*,
    462 F.3d 876 (8th Cir. 2006) ........................................... 8, 21, 22, 42

*Smith v. Copeland*,
    87 F.3d 265 (8th Cir. 1996) .......................................................... 37

*Thornton v. Carter*,
    109 F.2d 316 (8th Cir. 1940) ........................................................ 24

*Urban Hotel Dev. Co. v. President Dev. Grp., L.C.,*
    535 F.3d 874 (8th Cir. 2008) ........................................................ 18

*Youngberg v. Romeo,*
    457 U.S. 307 (1982) ....................................................................... *passim*

iii

Statutes

28 U.S.C. § 1291 ...................................................................................1
28 U.S.C. § 1331 ...................................................................................1
Minn. Stat. § 253B ..............................................................................25
Minn. Stat. § 253D ................................................................. 9, 10, 25

Rules

Fed. R. Civ. P. 52(a) ...........................................................................18

Appellate Case: 22-1459    Page: 6    Date Filed: 06/27/2022 Entry ID: 5171678

## JURISDICTIONAL STATEMENT

Federal question jurisdiction existed in district court pursuant to 28 U.S.C. § 1331. On February 23, 2022, the district court dismissed Counts V, VI, and VII of Plaintiffs' Third Amended Complaint with prejudice, *see* Add. 1; R. Doc. 1197, and entered final judgment on February 24, 2022. App. 215; R. Doc. 1199.[1]

Plaintiffs timely filed a Notice of Appeal on March 3, 2022. App. 216; R. Doc. 1200. Jurisdiction exists over this appeal from final judgment pursuant to 28 U.S.C. § 1291.

---

[1]Throughout this brief, "R. Doc." refers to docket entries in the district court. "App." refers to Plaintiffs' Appendix, which includes selected docket entries and transcripts and exhibits from the February 9 to March 18, 2015, trial. "Add." refers to Plaintiffs' Addendum.
.

1

# STATEMENT OF THE ISSUES

1. Did the district court err in concluding as a matter of law that Plaintiffs' remaining Counts were previously decided in *Karsjens v. Piper,* 845 F.3d 394 (8th Cir. 2017) ("*Karsjens I*")?

    > *Karsjens v. Piper,* 845 F.3d 394 (8th Cir. 2017)

    > *Karsjens v. Piper*, 366 F.Supp.3d 974 (D. Minn. 2018)

    > *Karsjens v. Lourey*, 988 F.3d 1047 (8th Cir. 2021)

2. Did the district court err in dismissing Plaintiffs' remaining Counts under the *Bell* standard, despite uncontroverted evidence that Plaintiffs and Class Members remained indefinitely confined to prison-like facilities against medical professionals' judgment?

    > *Bell v. Wolfish*, 441 U.S. 520 (1979)

    > *Youngberg v. Romeo,* 457 U.S. 307 (1982)

3. Did the district court err in finding that the conditions of Plaintiffs' confinement were not unconstitutionally punitive considering the totality of the circumstances?

    > *Bell v. Wolfish*, 441 U.S. 520 (1979)

    > *Morris v. Zefferi*, 601 F.3d 805 (8th Cir. 2010)

Appellate Case: 22-1459    Page: 8    Date Filed: 06/27/2022 Entry ID: 5171678

## STATEMENT OF THE CASE AND FACTS[2]

### I.    Procedural Background

This *pro se* case was filed on December 21, 2011, alleging constitutional and state law violations relating to Minnesota's indefinite civil commitment scheme. Shortly thereafter, the district court appointed Gustafson Gluek PLLC to represent the purported class. After the class was certified, years of discovery and significant motion practice, on November 7, 2014, the district court issued a final pretrial order bifurcating the trial and identifying the claims to be tried in the first trial (Phase One). R. Doc. 647.

The Phase One trial, which involved Counts I, II, III, IV, V, VI, VII and XI of Plaintiffs' Third Amended Complaint ("TAC"), App. 1; R. Doc. 635,[3] began on February 9, 2015, and concluded on March 18, 2015.[4] R. Docs. 839, 847-48,

---

[2] The detailed factual record from the trial proceedings in the district court are set forth in the district court's Findings of Fact, Conclusions of Law, and Order (App. 410; R. Doc. 966); *Karsjens I*, 845 F.3d 394 (8th Cir. 2017); and the February 23, 2022, Findings of Fact, Conclusions of Law, and Order (Add. 1; R. Doc. 1197).

[3] Plaintiffs' Third Amended Complaint alleges that the Minnesota Sex Offender Program ("MSOP") is punitive in Count V (the MSOP is operated in a punitive manner); Count VI (failure to provide less restrictive alternatives is "tantamount to punishment") and Count VII (confinement to the MSOP is "tantamount to punishment" because it continues even when statutory commitment criteria are no longer met). App. 64-66; 67-74; R. Doc. 635, at ¶¶254-261, 269-297.

[4] Counts IV, XI, XII and XIII were dismissed with prejudice on August 10, 2015. R. Doc. 1005.

Appellate Case: 22-1459    Page: 9    Date Filed: 06/27/2022 Entry ID: 5171678

851-52, 860-62, 865-66, 869-72, 883-85, 887-88, 892-93, 902, 906-08. Counts VIII, IX, and X, were reserved for a Phase Two of trial. R. Doc. 647.

On June 17, 2015, after considering the six-week trial record, the district court issued an order finding for Plaintiffs on Counts I and II, concluding that the Minnesota Commitment and Treatment Act (the "Act") is unconstitutional on its face and as applied. *See* App. 418, 420; R. Doc. 966, at 9, 11. Based on the Minnesota Supreme Court's previous decisions applying strict scrutiny to the Act, *see e.g., In re Blodgett*, 510 N.W.2d 910, 914 (Minn. 1994), and because the Act implicated the fundamental liberty rights of Plaintiffs, the district court applied strict scrutiny to Plaintiffs' Counts I and II. App. 462; R. Doc. 966, at 53. The district court expressly declined to decide Counts III, V, VI and VII, stating, "because any remedy fashioned [as to Counts I and II] will address the issues raised in the remaining Phase One Counts, the Court need not address Counts III, V, VI and VII." App. 474; R. Doc. 966, at 65. After seeking input from Defendants on the appropriate remedy – which Defendants refused to provide – the district court entered an injunction requiring the Defendants to take remedial action. R. Doc. 1035. This Court stayed that injunction pending appeal. *See* R. Doc 1057.

Defendants appealed to this Court, which rejected the application of strict scrutiny to the Act and reversed the district court's findings on Counts I and II,

4

holding that the Act was not unconstitutional on its face or as-applied under the *Lewis* fundamental rights/shocks the conscience test. *See Karsjens I*, 845 F.3d 394. Although this Court held that the "shocks the conscience standard" applied to Plaintiffs' as-applied due process claims, this Court did not make any findings as to whether the Act was punitive in purpose or effect under Counts III, V, VI or VII. *See id.* In fact, this Court's order makes no mention of these alternative claims. *Id.*

On December 8, 2017, Defendants filed a renewed Motion for Summary Judgment on Counts VIII, IX, and X before the district court. R. Docs. 1095, 1097. Defendants also argued that the district court should dismiss the remaining Phase One claims (Counts III, V, VI, and VII) under this Court's mandate from *Karsjens I*. R. Doc. 1097, at 4-9.

Plaintiffs opposed Defendants' motion to dismiss Counts III, V, VI and VII, arguing that these claims raise allegations that the Act is punitive (as opposed to civil) in purpose or effect and therefore unconstitutional. *See* R. Doc. 1100, at 15 (*citing* App. 64, 68, 71-72; R. Doc. 635, at ¶¶ 256, 271, 287, 293). Plaintiffs specifically argued that the basis for Counts V and VII is that civil commitment under the Act is punitive. *Id. (citing* App. 67-70; R. Doc. 635, at ¶¶ 269-283 (Count V, alleging denial of Plaintiffs' right to be free from punishment); App. 72-74; R. Doc. 635, at ¶¶ 292-297 (Count VII, alleging denial of Plaintiffs'

right to be free from inhumane treatment)). Similarly, Counts III and VI allege that commitment to the MSOP under the Act is punishment because the sham purposes evidenced by the treatment program and lack of less restrictive alternatives illustrate an improper purpose or effect and thus render Plaintiffs' commitment punitive. *Id.* at 16 *(citing* App. 64-66, 70-72; R. Doc. 635, at ¶¶ 254-261, 284-291).

Plaintiffs argued that this Court's opinion regarding Counts I and II in *Karsjens I* did not address whether the Act was punitive and, as such, the prior ruling in *Karsjens I* did not apply to these claims. R. Doc. 1100, at 16 (citing *Karsjens I*, 845 F.3d 394). Plaintiffs then argued that the evidence at trial demonstrated that Plaintiffs' commitment to the MSOP under the Act is punitive in purpose or effect, regardless of the expressed civil nature of the Act, because the treatment provided, the living conditions (including lack of less restrictive alternatives), and the discharge process interfere with Plaintiffs' opportunity for a reduction in custody or discharge; the consequence of which is permanent, punitive detention. *See id.* at 16-21. Based on those claims and evidence, Plaintiffs argued that the district court should find the Act punitive, and therefore unconstitutional, as alleged in Counts III, V, VI and VII. Id.

On August 23, 2018, the district court dismissed Plaintiffs' remaining Phase One claims (Counts III, V, VI and VII) with prejudice and dismissed Plaintiffs'

Appellate Case: 22-1459    Page: 12    Date Filed: 06/27/2022 Entry ID: 5171678

remaining Phase Two claims (Counts VIII, IX and X) with prejudice. Add. 42; R. Doc. 1108. The district court found that this Court's prior ruling in *Karsjens I* was dispositive of the Plaintiffs' remaining Phase One claims regardless of the theory of liability alleged because the claims must be analyzed under the *Lewis* fundamental rights/shocks the conscience test identified by this Court in *Karsjens I.* Add. 60; R. Doc. 1108, at 19. Specifically, the district court found that "the Eighth Circuit has explicitly held that Defendants' actions, as revealed in Phase One of trial, do not rise to the conscience-shocking level necessary to support Fourteenth Amendment substantive due process liability." *Id.* Additionally, the district court found that "[e]ven if this Court were free to conclude that the MSOP and Defendants' implementation of the [Act] amount to punishment of individuals who are subject to civil commitment, the Eighth Circuit's decision compels the conclusion that Defendants have not engaged in conscience-shocking conduct to support the imposition of liability under the Fourteenth Amendment." Add. 60-61; R. Doc. 1108, at 19-20.

On October 24, 2018, Plaintiffs appealed the district court's ruling on Counts III, V, VI and VII to this Court. R. Doc. 1118. After briefing but no argument, on February 24, 2021, this Court reversed the district court's opinion in large part because the district court applied the wrong legal standard. *See Karsjens v. Lourey,* 988 F.3d 1047 (8th Cir. 2021) ("*Karsjens II*"). Although this Court affirmed the

7

dismissal of Count III, it reversed the dismissal of Counts V, VI and VII and directed the district court to apply the *Senty-Haugen v. Goodno* deliberate indifference standard to the deficient medical treatment portion of Count VII and to apply the *Bell v. Wolfish* standard to Counts V, VI, and the remaining portion of Count VII. *Id.*

On remand, the parties again briefed Counts V, VI, and VII applying the new legal standards and submitted new proposed findings of fact and conclusions of law. R. Docs. 1173-78. On February 23, 2022, the district court dismissed Plaintiffs' remaining claims with prejudice, concluding that "this Court is bound by and obligated to follow the law as it currently exists. The Eighth Circuit has determined that the MSOP is constitutional both on its face and as applied." Add. 40; R. Doc. 1197, at 40. As such, the district court concluded that "based on the governing legal standards, Plaintiffs' claims related to the conditions of confinement and inadequate medical care also fail." *Id.*

In its order, the district court found that Count VI was duplicative of the claims in Counts I and II, which were decided in *Karsjens I*. Add. 8, 30; R. Doc. 1197, at 8, 30. The court reasoned that because Counts I and II were dismissed for failure to meet the shocks-the-conscience standard, and because the district court could not distinguish Count VI, the court must dismiss that Count as barred by *Karsjens I*. *Id.* The Court also dismissed Counts VI – VII as an improper attempt to relitigate claims

8

already considered and dismissed in Counts I and II. Add. 30; R. Doc. 1197, at 30 (citing *Karsjens I,* 845 F.3d at 410; *Karsjens II*, 988 F.3d at 1051). The district court also briefly considered Counts V and VI under the *Bell v. Wolfish* standard and summarily found that even applying this standard to those counts, Counts V and VI failed. Add. 30, 38; R. Doc. 1197, at 30, 38.

Plaintiffs timely appealed the district court's dismissal.

## II. Factual Background

Plaintiffs and Class Members have all been civilly committed to the Minnesota Sex Offender Program ("MSOP") pursuant to Minn. Stat. § 253D (the Act). Add. 17; R. Doc. 1197, at 17. All civilly committed patients are indefinitely committed to the MSOP, which is a treatment program with prison-like secure facilities in Moose Lake, MN and St. Peter, MN. Add. 18; R. Doc. 1197, at 18. The Moose Lake facility is the most restrictive facility and houses patients in the first two phases of the treatment program. Add. 19; R. Doc. 1197, at 19. The St. Peter facility houses patients in the third and final stage of the program only when they are being prepared for community placement at the end of treatment. Add. 17-18; R. Doc. 1197, at 17-18.

Defendants do not provide an assessment at the time of initial commitment to MSOP to determine what phase of the program the individual should be place in. App. 434; R. Doc. 966, at 25. As a result, all patients are put in the Moose Lake

9

prison-like facility. Committed individuals to the MSOP cannot be initially placed at the Community Preparation Services ("CPS") facility, which is outside the secure perimeter of the St. Peter campus. Add. 20; R. Doc. 1197, at 20.

The court-appointed 706 Experts[5] found that although MSOP did not perform risk assessments on newly committed individuals, it would undoubtedly be helpful in determining the proper facility in which to house that individual and into which phase of treatment that individual should be admitted. App. 425; R. Doc. 966, at 16.

Minn. Stat. § 253D provides procedures and evidentiary standards for a committed person to petition for a reduction in his or her level of custody or release from confinement. Specifically, six months after final commitment and any related appeals, a client may seek a reduction in custody, which includes transfer away from a secure facility, provisional discharge, and full discharge. Add. 20; R. Doc. 1197, at 20. However, because of the limited bed capacity at the CPS facility, committed individuals have had to wait for beds to become available before being transferred to CPS from the more restrictive facilities at the MSOP. The MSOP Reintegration Director credibly testified that there have been individuals who have been transferred to CPS who have had to wait due to a lack of bed space at the CPS

---

[5] On December 6, 2013, the district court appointed four experts, Dr. Naomi Freeman ("Freeman"), Deborah McCulloch ("McCulloch"), Dr. Robin Wilson ("Wilson"), and Dr. Michael Miner ("Miner"), pursuant to Rule 706 of the Federal Rules of Evidence. App. 425; R. Doc. 966, at 16 (citing R. Doc. 393).

10

facility. Add. 19-20; R. Doc. 1197, at 19-20; *see also* App. 235; R. Doc. 940, at 923:2-6; App. 236; R. Doc. 940, at 924:7-15; App. 270-71; R. Doc. 958, at 3033:23-3034:4. This wait can be years.

According to professionals in this area (both the court-appointed Experts and MSOP's own professionals) there are individuals at MSOP who could be treated in a less restrictive setting. For example, as early as 2011, MSOP clinicians and outside psychologists who assess patients for the court, agreed that some offenders at MSOP facilities could be treated in less secure community settings. App. 328 (Legislative Auditor's Report at 43). During the trial, the 706 Experts agreed with that assessment. McCulloch testified that she believed there were people at both Moose Lake and St. Peter that could be served in a less restrictive environment. App. 223-24; R. Doc. 937, at 255:23-256:5. Wilson also testified that there are people at MSOP who do not belong there given their clinical presentation. App. 227-28; R. Doc. 938, at 550:22-551:1.

The Clinical Directors at MSOP program testified that in their professional judgment, there are numerous individuals at MSOP who could be treated in less restrictive settings. For example, Peter Puffer, the Moose Lake Director, testified that there were patients at MSOP's secure facilities who could be treated in a less restrictive setting, including referencing six individuals who were recommended for transfer to a less restrictive facility, which ultimately never happened. App. 252-53;

11

R. Doc. 942, at 1560:20-22, 1561:2, 6-10. Similarly, Dr. Haley Fox, the St. Peter Clinical Director, also testified that there were individuals at MSOP who could be provisionally discharged or treated in less restrictive settings, including the same six referenced by Puffer. App. 254-55; R. Doc. 942, at 1597:3-1598:6. Even MSOP's Executive Clinical Director Janine Hébert acknowledged that there were possibly people in CPS that could safely live in the community. App. 265; R. Doc. 947, at 2708:1-6.

MSOP Treatment Psychologist also testified that there were Class members who in her professional judgment could be provisionally discharged or treated in a less secure setting. App. 260-261; R. Doc. 944, at 1965:15-25, 1966:6-9, 14. As did MSOP Clinicians Darci Lewis and Terrence Ulrich. App. 247-248; R. Doc. 942, at 1406:23-25, 1407:16, 18-23; App. 249; R. Doc. 942, at 1477:8-23.

The 706 Experts (independent experts appointed by the district court) also found that the juvenile-only offenders should not be treated at the MSOP secure facilities but should be treated in a less restrictive setting. App. 229; R. Doc. 938, at 663:9-11; App. 238; R. Doc. 940, at 1078:5-14. The St. Peter Clinical Director agreed that at least some of those individuals could be treated in a less secure setting. App. 255-56; R. Doc. 942, at 1598:24-1599:9. Despite recognizing that these individuals may not be dangerous, MSOP executives testified that it does not have the money to assess all the juvenile-only offenders. App. 196; R. Doc 917, at 74:11-

20; App, 269; R. Doc. 948, at 3018:3-16 (acknowledging that individuals with juvenile-only offenses "may or may not be very dangerous" but MSOP does not have enough money to assess all juvenile-only offenders).

The 706 Experts also testified that there were individual in the Assisted Living Units and the Alternate Programs who could be treated in less restrictive settings. *See e.g.* App. 241; R. Doc. 941, at 1125:2-4. Even Defendant Nancy Johnston, the Executive Director of MSOP, acknowledged that there was a large population of individuals in the Assisted Living Unit (for elderly individuals) and Alternative Program (for individuals with cognitive impairment) who could be treated in less restrictive environments. App. 407. However, they have not been moved - not for any reason related to any professional judgement but for political reasons. *See e.g.* App. 431; R. Doc. 966, at 22 (discussing the Governor's directive to halt any movement of individuals to a less restrictive alternative facility).

The 706 Experts made clear that it is their professional judgment that individuals should be treated in the least restrictive setting. Freeman testified individuals should be treated in the least restrictive environment possible. App. 232-33; R. Doc. 939, at 736:7-22; 737:14-17. As early as 2014, the Defendants knew, when the 706 Experts released their findings that "[i]t is a fundamental principle in mental health treatment that individuals should be treated in the least restrictive

13

environment to ensure that infringement on individual liberties is kept at a minimum." App. 147-48; R. Doc. 658, at 61-62.

Even today, and even in the face of court orders directing people be moved to less restrictive settings, MSOP fails to transfer people for reasons unrelated to professional judgement. On December 2, 2021, the Ramsey County Commitment Appeal Panel ("CAP") issued an order finding the Commissioner of Human Services and Nancy Johnston in contempt for failing to transfer an individual involuntarily committed to MSOP, from the Moose Lake facility to CPS after that individual had been approved for transfer by the Commitment Appeal Panel. App. 201; R. Doc. 1194) (*In the Matter of the Civil Commitment of Al Stone Folson,* County File No. 62-MN-PR-06-267; Appeal Panel File No. AP19-9153 (Ramsey County, Dec. 2, 2021)) ("*Folson*"). [6]  There are more than fifty MSOP patients waiting for transfer to CPS, some for more than 900 days – almost three years –  after CAP ordered their transfer. App. 207; R. Doc. 1194, at 4.

There are other policies, unrelated to treatment, that delay progress through the program. For example, to progress to the next treatment phase, a committed individual must have at least two consecutive quarters with no major Behavioral Expectation Reports, even if the major BERs are not related to sexual offending.

---

[6] The district court discussed this case and contempt order in Add. 9-10; R. Doc. 1197, at fn. 8. A copy of the contempt order is included in Plaintiffs' Appendix as App. 201.

Add. 24; R. Doc. 1197, at 24. Minor BERs, including those unrelated to sexual offending, can prevent a committed individual from progressing in treatment phase. *Id.* BERs can also affect scoring on the Matrix factors. *Karsjens v. Jesson,* 109 F.Supp.3d 1139, 1156 (2015). Committed individuals can be regressed in treatment for receiving major BERs. Add. 24; R. Doc. 1197, at 24.

Additionally, leadership changes, new executive directors, and re-evaluations of treatment protocols has led many Class Members to be moved back phases, or to completely restart the treatment program. *See e.g.* App. 277; R. Doc. 953, at 4111:1-3; App. 198-99; App. 242-43; R. Doc. 941, at 1227:21-1228:1, 1228:14-23; App. 262; R. Doc. 944, at 1967:15-23. Understaffing and poor training has resulted in sporadic and inconsistent treatment in the program. App. 274; R. Doc. 952, at 3882:3-22. Understaffing can also cause clinicians to have greater caseloads, which affects Class Member treatment progress. App. 251; R. Doc. 942, at 1517:11-13. This understaffing also results in a failure to provide regular assessments. App. 446; R. Doc. 966, at 37.

Finally, as noted by the 706 Experts, Defendants fail to provide adequate medical treatment for members of the Class. As the evidence at trial established, individuals on the Assisted Living Unit include elderly individuals and others with brittle chronic disorder and ambulatory disabilities. Despite these conditions, there are no nursing or medical staff assigned to the Assisted Living Unit and it is not clear

what specialized training, if any, is provided to the security counselors assigned to this unit. App. 104; R. Doc. 658, at 18. Additionally, some Class members are confined to wheelchairs or use walkers, some are oxygen tank dependent, and some require dialysis. The 706 Experts raised broad concerns about the treatment of this group. App. 104-05; R. Doc. 658, at 18-19. Those Experts also recognized the overall insufficient resources put into MSOP's medical and psychological treatment of all Class members. App. 144; R. Doc. 658, at 58.

## SUMMARY OF ARGUMENT

In direct contradiction to *Karsjens II*, the district court's February 23, 2022, order concluded that the remaining Counts had already been rejected by this Court in *Karsjens I*. Not so.

In *Karsjens I*, this Court reversed and remanded the district court's finding that MSOP was unconstitutional on its face and as applied. On remand, the district court found that the ruling in *Karsjens I* disposed of Plaintiffs' remaining Phase One claims, regardless of the theory of liability alleged, despite the fact that this Court's *Karsjens I* opinion makes no mention of Counts V, VI, or VII. In *Karsjens I,* this Court applied the *Lewis* "shocks the conscience" standard rather than the *Bell v. Wolfish* standard.

In *Karsjens II,* this Court made that clear that the remaining claims and supporting allegations differ from those that were evaluated in *Karsjens I.*

16

Specifically, this Court found that the remaining counts (Counts V, VI, and VII) did not challenge the inability to be released from the facility but rather that, when considered as a whole, the conditions of confinement amount to punishment in violation of the Fourteenth Amendment." *Karsjens II,* 988 F.3d at 1051. In other words, none of the remaining Counts are duplicative of Counts I and II. Thus, Plaintiffs' remaining claims are neither repackaged variations on their original claims in Count I and II, nor have they been meaningfully litigated in front of this Court or the district court using the appropriate standard.

The district court cursory application of the *Bell* standard to Counts V, VI and VII was also flawed. Under *Bell,* pretrial detainees [like civil committees in this case] may not be punished at all. 441 U.S. at 535. The Supreme Court has held in *Youngberg v. Romeo,* 457 U.S. 307 (1982), that individuals who are involuntarily committed have a right to freedom from unreasonable restraints and makes clear that the decisions made by professionals are presumptively valid. Therefore, when a decision is a substantial departure from accepted professional judgment, practice, or standards, liability may be imposed.

The uncontroverted evidence presented at trial and argued at every stage in this case demonstrates that, rather than operating consistent with professional judgment, MSOP operates *directly contrary* to professional judgment and for political reasons, and as such, the conditions of confinement at MSOP amount to

Appellate Case: 22-1459    Page: 23    Date Filed: 06/27/2022 Entry ID: 5171678

punishment. As such, the district court erred in dismissing Counts V, VI and VII under the *Bell* standard.

## STANDARD OF REVIEW

There is a strong presumption that the district court's factual findings are correct, *see Urban Hotel Dev. Co. v. President Dev. Grp., L.C.,* 535 F.3d 874, 79 (8th Cir. 2008) (citations omitted), and those findings should not be set aside unless they are clearly erroneous. *See Meecorp Cap. Markets, LLC v. PSC of Two Harbors, LLC,* 776 F.3d 557, 562-63 (8th Cir. 2015); *Falls v. Nesbitt,* 766 F.2d 375, 377 (8th Cir. 1992) (citing Fed. R. Civ. P. 52(a). However, questions of law are reviewed *de novo*. *See, e.g., Meecorp.,* 776 F.3d at 562-63 (citing *Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth.,* 339 F.3d 702, 710-11 (8th Cir. 2003)).

## ARGUMENT

### I. The District Court Erred in Holding That Plaintiffs' Count VI Was Previously Decided.

It is clear that this Court's ruling in *Karsjens I,* was specific to Counts I and II as related to the Act. In *Karsjens I*, this Court found that the district court should have applied the rational relationship test to Count I and the test laid out in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) to Count II. *Karsjens I,* 845 F.3d at 408, 410-11. This Court concluded that "[n]one of the six grounds upon which the district court determined the state defendants violated the class plaintiffs' substantive due process rights in an as-applied context satisfy the conscience-shocking

18

standard." *Id.* at 410-11. The Court then reversed the district court's finding of a constitutional violation and remanded the matter to the district court for further proceedings *on the remaining claims* in the Third Amended Complaint. *Id.* at 411 (emphasis added).

On the first remand, the district court determined that Counts III, V, VI, and VIII were neither expressly nor impliedly decided by the Eighth Circuit on appeal and that it would resolve the remaining Counts on their merits in light of the Eighth Circuit's decision. Add. 53; R. Doc. 1108, at 12. In deciding the remaining Counts, the district court found that "to hold Defendants liable under Counts III, V, VI, and VII, the court must conclude that the state defendants' actions were conscience-shocking and [that] those actions violated a fundamental liberty interest." *Id.* (quoting *Karsjens I* at 408 (directing the district court to apply the *Sacramento v. Lewis* "shocks the conscience" standard to Plaintiffs' Fourteenth Amendment claims)). The district court dismissed Plaintiffs' Count VI, reasoning:

> As with Plaintiffs' failure-to-provide treatment claim, the Eighth Circuit's *Karsjens* [*I*] decision forecloses finding Defendants' [sic] liable under Count VI. The Eighth Circuit's statements regarding the lack of a fundamental right to treatment and the lack of a fundamental liberty interest in freedom from physical restraint strongly imply that civilly committed individuals do not retain a fundamental liberty interest in the least restrictive confinement appropriate for their risk level. What is more, the Eighth Circuit specifically acknowledged this Court's findings that 'individuals have remained confined at the MSOP even though they have completed treatment or sufficiently reduced

Appellate Case: 22-1459     Page: 25     Date Filed: 06/27/2022 Entry ID: 5171678

their risk' and that 'there are insufficient less restrictive alternatives available for transfer and no less restrictive alternatives available for initial commitment.' It nevertheless held that '[n]one of the . . . grounds upon which the district court determined the state defendants violated the class plaintiffs' substantive due process rights in an as-applied context satisfy *the conscience-shocking standard*."

Add. 57-58; R. Doc. 1108, at 16-17 (quoting *Karsjens I* at 402-03, 10) (internal citations omitted) (emphasis added).

The district court also disposed of Plaintiffs' alternative theory of liability – that Defendants are unconstitutionally punishing civilly committed individuals under *Bell v. Wolfish*, 441 U.S. 520 (1979) – stating that "[e]ven under this alternative theory of liability, the Court once again concludes that the Eighth Circuit's holdings are dispositive of Plaintiffs' remaining Phase One claims. Regardless of the theory of liability alleged, Plaintiffs' Fourteenth Amendment substantive due process claims are analyzed under the two-part [*Lewis v. Sacramento*] test identified by the Eighth Circuit in its Karsjens [*I*] opinion." Add. 60; R. Doc. 1108, at 19.

On appeal, this Court rejected the district court's dismissal of Counts V, VI, and VII and made clear that they must be separately reviewed because they present different claims than Counts I and II. *Karsjens II,* 988 F.3d 1047 (finding the remaining claims and supporting allegations differ from those evaluated in *Karsjens I* because the claims decided in *Karsjens I* focused on the statutory scheme itself;

whereas the present claims and allegations focus squarely on the conditions of confinement).  In other words, this Court found that Counts V, VI and VII do not challenge Plaintiffs' inability to be released from the facility but rather the conditions within the facility and whether the conditions of confinement, when considered as a whole, amount to punishment in violation of the Fourteenth Amendment.  *Id.* at 1051. This Court found that the district court erred as a matter of law when it applied the "shocks the conscience" standard to Counts V, VI, and VII, and remanded the case for the district court to apply the deliberate indifference standard outlined in *Senty-Haugen* to the medical claims*,* and to consider counts V and VI under the standard for punitive conditions of confinement outlined in *Bell*. *Id.* at 1053-54.

On remand a second time, the district court acknowledged that, "because the Eighth Circuit reviewed Counts III, V, VI, and VII in *Karsjens II* and only dismissed Count III as duplicative of claims asserted in *Karsjens I,*" Count VI was properly before the district court. Add. 7-8; R. Doc. 1197, at 7-8.  Then, it did what it did after the first remand; it dismissed Count VI as "duplicative of those already considered and dismissed" in *Karsjens I and II.* Add. 8; R. Doc. 1197, at 8.[7]   Specifically, the district court found that *Karsjens I* reversed both this Court's liability findings and injunctive order relating to these [Count VI] claims." *Id.* (citing *Karsjens I,* 845 F.3d

---

[7] Although the district court did not specifically state that it was dismissing Counts V and VII as being previously decided, if it intended such a finding to apply to those Counts that also would be in error for the same reasons as noted in this section.

21

at 409-11). The district court erred in finding that this Court's decisions in *Karsjens I* and *II* barred consideration of Count VI. The claims articulated in Count VI of Plaintiffs' Third Amended Complaint *were never considered* under the *Bell* standard for unconstitutionally punitive conditions of confinement.

This Court in *Karsjens I* directed the district court to consider Plaintiffs' Fourteenth Amendment challenges raised in Counts I and II under the rational relationship review applying *Sacramento v. Lewis*. *See Karsjens I,* 845 F.3d at 411. The district court reversed its findings of liability and broadly held that all of Plaintiffs' claims of failed to meet the conscience-shocking standard in *Sacramento v. Lewis*. Add. 60-61; R. Doc. 1108, at 19-20 (*Karsjens,* 336 F.Supp.3d at 986-87). In *Karsjens II,* this Court reversed these findings as to Counts V, VI, and VII and directed the district court to analyze these claims under *Bell v. Wolfish* and *Senty-Haugen v. Goodno,* respectively. *Karsjens II,* 988 F.3d at 1053-54. The district court's assertion in its February 23, 2022, order that Count VI had thus been considered under the proper legal standard and disposed of at any point in this litigation is wrong.

## II.  The Remaining Counts Are Not Duplicative of Any of Plaintiffs' Other Claims.

The district court also erred in finding that it could not "conclude that the claims in Count VI are distinct from those already considered and rejected in Counts I and II by the Eighth Circuit." Add. 7; R. Doc. 1197, at 7. Likewise, the district

court erred finding "Plaintiffs attempt to reassert their challenges to the treatment program under the guise that perceived flaws in the treatment program contribute to the overall totality of the circumstances that make MSOP's conditions of confinement punitive," and noting that "regardless of how Plaintiffs repackage these claims, they remain dismissed and are not properly before the Court given the Eighth Circuit's decision." Add. 11; R. Doc. 1197, at fn. 10.

As noted above, Counts V, VI and VII were not disposed of by either *Karsjens I* or *Karsjens II* and remained properly before the district court. Furthermore, as was explicitly made clear by this Court in *Karsjens II,* the legal claims in Plaintiffs' Counts V, VI, and VII, "do not challenge [Appellants'] inability to be released from the facility but rather the conditions within the facility. They contend that, considered as a whole, their conditions of confinement amount to punishment in violation of the Fourteenth Amendment." *Karsjens II,* 988 F.3d at 1051.

The Eighth Circuit directed the district court to analyze these Counts under the *Bell* standard for unconstitutionally punitive conditions, and "[i]n considering whether the conditions . . . are unconstitutionally punitive, the court must review the totality of the circumstances.*" Id.* at 1054 (internal quotations omitted). In its February 23, 2022, order, the district court lamented, in determining that "any treatment-related claim is beyond the scope of the Eighth Circuit's remand," that "the district court is without power to do anything which is contrary to either the

23

letter or the spirit of the mandate construed in the light of the opinion of the Eighth Circuit deciding the case." Add. 10-11; R. Doc. 1197, at 10-11 (quoting *Thornton v. Carter,* 109 F.2d 316, 20 (8th Cir. 1940) (internal quotations omitted). That is simply not the mandate this Court issued in the second appeal. *See Karsjens II,* 988 F.3d at 1051 (directing district court to evaluate Counts V, VI and VII under the *Bell* standard).

Insofar as the district court believes that Plaintiffs' allegations and arguments in the remaining Counts are the same as those the Eighth Circuit has already considered and rejected, it is simply in error. In Count I, Plaintiffs argued that Minn. Stat. § 253 is unconstitutional on its face and as applied because it, *inter alia,* fails to discharge civilly committed individuals after they satisfy the statutory requirements for reduction in custody. *See generally* App. 59-60; R. Doc. 635 at ¶¶ 226-33. Count II argued that, *inter alia*, Defendants are aware of individuals currently at MSOP's secure facilities that could be treated in a less restrictive environment but they do not transfer them to those facilities. App. 60-64; R. Doc. 635, at ¶¶ 234-53. Plaintiffs' Counts VI (and Counts V or VII), on the other hand, does not assert that Plaintiffs are suffering constitutional violations because they should be released to the least restrictive setting, as this Court has discussed in *Beaulieu v. Ludeman*, 690 F.3d 1017, 1032 (8th Cir. 2012). Plaintiffs' argument as presented to this Court in *Karsjens II* and to the district court on remand is that *Bell*

24

necessarily implicates *Youngberg v. Romeo,* 457 U.S. 307 (1982), which held "the state may not restrain persons except when and to the extent that *professional judgment* deems it necessary." *Id.* at 321-22 (emphasis added).

The district court and this Court in *Karsjens I* spent considerable time on whether there are statutory mechanisms in place for committed individuals to petition for and, conceivably, receive a reduction in custody. *See, e.g., Karsjens I*, 845 F.3d at 409-410 (finding MCTA facially constitutional because it provides "proper procedures and evidentiary standards" for a committed person to petition for a reduction in custody under Minn. Stat. § 253d.27(2); the MCTA provides a special review board under Minn. Stat. § 253B.18(4c)(a); the MCTA files a report to a judicial appeal panel under Minn. Stat. §§ 253D.27(3)-(4), 253B.19(1), etc.); Add. 9-10; R. Doc. 1197, at fn. 8 ("placement [within MSOP] is neither arbitrary or purposeless" because Minn. Stat. § 253D.27 provides a "process under which an MSOP Client may petition for reduction in custody, which includes transfer out of a secure treatment facility, a provisional discharge, or a discharge from commitment." (internal quotations omitted), etc.). However, not a drop of ink has been spilled on the analysis of whether Defendants continue to violate Plaintiffs' constitutional

Appellate Case: 22-1459    Page: 31    Date Filed: 06/27/2022 Entry ID: 5171678

rights by failing to conform the level of restraint foisted upon of Plaintiffs and Class Members to that which professional judgment deems necessary.[8]

In short, the district court's characterization of Plaintiffs' Count VI (and by extension Counts V and VII) is in error. Plaintiffs do not seek to litigate whether they are entitled to the least restrictive alternatives available. Rather, they argue that they are entitled to freedom from restraint except when and to the extent professional judgment deems it necessary. *Youngberg*, 457 U.S. at 321-22. Otherwise, the restraints are no longer reasonably related to a legitimate goal but rather are arbitrary and punitive under the *Bell* standard that this Court directed the district court to apply. *See Bell*, 441 U.S. at 539; *Karsjens II,* 988 F.3d at 1052 (citing *Bell v. Wolfish*, 441 U.S. at 535, (holding that pretrial detainees may not be punished); *Youngberg,* 457 U.S. at 316)).

## III. The District Court Erred in Finding Count V and VI Failed Under *Bell*.

In *Karsjens II*, the Eighth Circuit recognized that "[n]either pretrial detainees nor civilly committed individuals may be punished without running afoul of the Fourteenth Amendment…. Regarding pretrial detainees, this prohibition against

---

[8] To suggest that the SRB process insulates Defendants from liability because patients can petition for release is outrageous given the Defendants outright refusal to follow Court orders and the recent contempt finding for that very refusal. App. 201; R. Doc. 1194 (*In the Matter of the Civil Commitment of Al Stone Folson,* County File No. 62-MN-PR-06-267; Appeal Panel File No. AP19-9153 (Ramsey County, Dec. 2, 2021).

punishment encompasses conditions of confinement." 988 F.3d at 1052 (citing *Bell v. Wolfish*, 441 U.S. at 535, (holding that pretrial detainees may not be punished); *Youngberg,* 457 U.S. at 316)).

This Court went on to note that, "[i]n analyzing whether a condition of confinement is punitive, courts 'decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose'" and "[u]nless the detainee can show 'an expressed intent to punish ..., that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it.'" *Id.* at 1054 (citing *Bell*, 441 U.S. at 538 (internal citation omitted)); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) ("[A]s *Bell* itself shows (and as our later precedent affirms), a pretrial detainee can prevail by providing ... objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.").

Put another way, "if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Bell*, 441 U.S. at 539. This Court additionally noted that "[i]n considering whether the conditions ... are

27

unconstitutionally punitive," the court must "review the totality of the circumstances of [Appellants'] confinement." *Id.* at 1054 (citing *Morris v. Zeferi*, 601 F.3d at 810 (8th Cir 2010)).

In *Youngberg*, the Supreme Court held that, in balancing the legitimate interests of the state and the rights of involuntarily committed persons to reasonable conditions of safety and freedom form unreasonable restraints, "the Constitution only requires that the courts make certain that professional judgment in fact was exercised." 457 U.S. at 321 (quoting *Romeo v. Youngberg,* 644 F.2d 147, 178 (3d Cir.) (Seitz, C.J concurring) (vacated)). The Court continued "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.* at 321-22. The *Youngberg* Court further held that "Respondent thus enjoys constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." *Id.* at 324. Most importantly, "[the State] may not restrain residents **except when and to the extent professional judgment deems this necessary** to assure such safety or to provide needed training." *Id.* (emphasis added).

Against this background, the district court was instructed to evaluate whether the conditions of confinement at MSOP were unconstitutionally punitive. The

district court failed to do so because it ignored the overwhelming and uncontroverted evidence that Plaintiffs and Class Members are denied less restrictive alternatives in direct contradiction of the MSOP professionals' uncontroverted professional judgment.

## A. The Professionals Testified that Individuals at MSOP Can and Should Be Treated in Less Restrictive Settings.

First, Plaintiffs disagree with the district court's assertion that it "must defer to the Defendants' 'execution of policies and practices that in [their] judgment [is] needed to preserve internal order and discipline and to maintain institutional security." Add. 9-10; R. Doc. 1197, at fn. 8 (quoting *Bell*, 441 U.S. at 547). At no point throughout this case have any experts or defendants opined that MSOP's policies and procedures regarding Plaintiffs' access to less restrictive alternatives were in any way related to order, discipline, or institutional security. Rather, the evidence demonstrates that these policies were created in the interests of political convenience and preservation of resources. *See, e.g.,* App. 92; R. Doc. 658, at 6 (MSOP does not perform risk assessments on newly committed individuals which would undoubtedly be helpful in determining the proper facility in which to house that individual and into which phase of treatment that individual should be admitted.); App. 236; R. Doc. 940, at 923:2-6, 924:7-15; App. 270-71; R. Doc. 948, at 3033:23-3034:4 (individuals who are cleared for reduction in custody are not transferred to the Community Preparation Services ("CPS") building outside the

29

secure perimeter of the St. Peter campus because there are insufficient beds due to budget constraints); App. 196; App. 269; R. Doc. 948, at 3018:3-16 (acknowledging that individuals with juvenile-only offenses "may or may not be very dangerous" but MSOP does not have enough money to assess all juvenile-only offenders).

Budgetary restrictions or lack of resources cannot not justify constitutional violations. *See Finney v. Arkansas Bd. of Correction*, 505 F.2d 194, 201 (8th Cir. 1974) (finding that "[l]ack of funds is not an acceptable excuse for unconstitutional conditions of incarceration."). As such, the court should evaluate whether professional judgment was exercised in MSOP's decisions on when and to what extent it restrains Plaintiffs and Class members. If professional judgment was not the basis for those decision, it should find the program to be punitive. *Youngberg*, 457 U.S. at 324.

The professionals in this case testified repeatedly over the course of a six-week trial. Their judgment is clear and has never been challenged by Defendants. In 2014, the 706 Experts indicated in their report that "[i]t is a fundamental principle in mental health treatment that individuals should be treated in the least restrictive environment to ensure that infringement on individual liberties is kept at a minimum." App. 147-48; R. Doc. 658, at 61-62. The Rule 706 Experts testified that it is their professional judgment that individuals should be treated in the least restrictive setting. App. 232-233; R. Doc. 939, at 736:7-22; 737:14-17.

30

Contrary to the professional view that individuals should be treated in the least restrictive environment possible, the Rule 706 Experts testified that there are individuals at MSOP who could be treated in less restrictive settings and MSOP treatment personnel know this. McCulloch testified that she believed there were people at both Moose Lake and St. Peter that could be served in a less restrictive environment. App. 223-24; R. Doc. 937, at 255:23-256:5. Wilson also testified that there are people at MSOP who do not belong there given their clinical presentation. App. 227-28; R. Doc. 938, at 550:22-551:1. Even as early as 2011, the Legislative Auditors noted that MSOP clinicians and outside psychologists who assess offenders for the court, agreed that some patients at MSOP facilities could be treated in less secure community settings. App. 328 (Legislative Auditor's Report at 43).

MSOP professionals testified as much at trial. The Clinical Directors in charge of the design of the MSOP program testified that in their professional judgment, there are individuals at MSOP that could be treated in less restrictive settings. *See* App. 265; R. Doc. 947, at 2708:1-6; App. 252-53; R. Doc. 942, at 1560:20-22, 1561:2, 6-10; App. 254-55; R. Doc. 942, at 1597:3-1598:6. Additionally, the treatment providers and clinicians testified that in their professional judgment there were patients who could be treated in less restrictive settings. See App. 260-61; R. Doc. 944, at 1965:15-25, 1966:6-9, 14; App. 247-48; R. Doc. 942, at 1406:23-25, 1407:16, 18-23; App. 249; R. Doc. 942, at 1477:8-23.

31

The 706 Experts and MSOP also professionals testified that in their professional judgment, the population of juvenile-only offenders at MSOP did not need sexual offender programming and could be effectively treated in less restrictive settings. See App. 229; R. Doc. 938, at 663:9-11; App. 238; R. Doc. 940, at 1078:5-14; App. 256-57; R. Doc. 942, at 598:24-1599:9.

Finally, the 706 Experts testified that there were individual in the Assisted Living Units and the Alternate Programs who could be treated in less restrictive settings. *See e.g.* App. 241; R. Doc. 941, at 1125:2-4. Even Defendant Nancy Johnston, the Executive Director of MSOP, acknowledged that there was a large population of individuals in the Assisted Living Unit and Alternative Program could be treated in less restrictive environments. App. 407.

Yet, despite the overwhelming, uncontroverted, professional judgment that numerous individuals could be and should be treated in less restrictive settings, politics. aberrant policies and unjustified practices (not based on professional judgment) have preempted the professional judgment, resulting in an unconstitutionally punitive program under both Counts V and VI, when the proper standard under *Bell* and *Youngberg* is applied.

32

## B. MSOP Has Restrained Plaintiffs and Class Members Beyond the Extent that Professionals Deemed Appropriate.

The foregoing makes apparent that the professional judgment in this case calls for individuals to be treated in less restrictive alternative facilities. However, it is also apparent that Defendants' policies and procedures (and the politics of the State's leaders) run directly contrary to this judgment. Defendants apply a blanket policy requiring all individuals at MSOP to start treatment at the high security prison-like Moose Lake facility, regardless of their risk level or amenability to less restrictive alternatives. *See* App. 257; R. Doc. 942, at 1600:7-10. The district court found as much in its initial Order, recognizing "[t]here is no alternative placement option to allow individuals to be placed in a less restrictive facility at the time of their initial commitment to the MSOP." App. 429; R. Doc. 966, at 20. As a result, "[u]nder current law all offenders committed to MSOP are presumptively placed in the highest level of security. The result is that some offenders, while meeting the criteria for commitment, may be needlessly confined in the most secure facilities (and are therefore being punished), when both public safety and the need for effective treatment might be better served in a less restrictive environment." App. 280.

Defendants also, as a matter of policy, do not move individuals who have been clinically approved to have access to less restrictive confinement. As the district court noted, "It is undisputed that there are civilly committed individuals at the MSOP who could be safely placed in the community or in less restrictive facilities."

33

App. 413; R. Doc 966, at 4; *see also,* App. 159; R. Doc. 658, at 73 (The Rule 706 Experts observe that "[a]t present, MSOP has no framework for a less restrictive alternative, nor does it have services available to assist clients in the task of community reintegration should they achieve release.").

Finally, lest it be argued that Defendants' policies have improved since the 2015 trial, Defendants currently operate MSOP not only in contravention to professional medical judgment, but also in violation of judicial mandate. On December 2, 2021, the CAP issued an order finding the Commissioner of Human Services and Nancy Johnston in contempt for failing to transfer plaintiff, an individual involuntarily committed to MSOP, from the Moose Lake facility to CPS after plaintiff had been approved for transfer by the Commitment Appeal Panel. App. 201; R. Doc. 1194. The CAP issued official orders for transfer, which the Commissioner of Human Services and the MSOP administration flatly and flagrantly ignored. There are more than fifty MSOP patients waiting for transfer to CPS, some for more than 900 days after the CAP ordered their transfer. The CAP in *Folson* found that defendants were given reasonable time to transfer the patients to CPS, failed to transfer those patients, and acted in bad faith by ignoring the court orders for transfer. *Id.*

The sum of these actions and inactions is a scheme which runs directly contrary to *Bell* and *Youngberg*: Plaintiffs, who are treated like pretrial detainees

34

and "who may not be punished at all" continue to be in housed in a prison-like atmosphere *in direct contravention* of professional judgment. 441 U.S. at 539; *see also Youngberg*, 457 U.S at 322-32. CAP exists as the facilitating entity to allow committed individuals to petition for reduction in custody. In fact, transfer to an open facility is a requirement that the Minnesota Supreme Court described as essential to satisfy constitutional due process. *See Call v. Gomez*, 535 N.W.2d 312, 318-319 (Minn. 1995). Thus, the application of *Youngberg* here is apparent – once the CAP orders a patient transferred from Moose Lake to CPS, continuing to hold that patient at Moose Lake is a violation of their constitutional rights.

This is not, as the district court asserted, a "grave flaw[] in the implementation of this process [of petitioning for reduction of custody]." Add. 9-10; R. Doc. 1197, at fn. 8. This is how Defendants intend the process to operate. Following trial, the district court found dozens of Class Members who have been approved for reduction in custody await placement in CPS due to a shortage of beds. App. 431-32; R. Doc. 966, at 22-23.  At the time of trial, the CPS facility had a thirty-eight-bed capacity limit. App. 427; R. Doc 966, at 18.  Following the commencement of this lawsuit in 2011, the MSOP announced plans to construct a new facility, akin to CPS, with an additional thirty beds. *Id*. Construction on the new building is still not complete. The CAP continued to note that "the only option [defendants] were willing to explore in the nearly two years since the April 2020 Order for Transfer was issued was to seek

35

bonding from the Legislature . . . ." App. 212; R. Doc. 1194, at ¶ 30. Thus, in over a decade since this lawsuit started, MSOP has been unwilling or unable to find suitable accommodations for individuals who, according to professional judgment, should be in less restrictive facilities.[9]

Defendants' official and unofficial policies regarding less restrictive alternatives are in direct contradiction to professional judgment. Thus, they are excessive restraint under *Youngberg* and unconstitutional punishment under *Bell.* The district court erred when it found no *Bell* violation in the remaining Counts. Add. 15; R. Doc. 1197, at 15.

## IV. The District Court Erred in Finding that Plaintiffs' Conditions of Confinement Were Not Unconstitutionally Punitive Considering the Totality of the Circumstances.

This Court, applying *Bell* to this case, directed the district court to "decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose' and "[u]nless the detainee can show 'an expressed intent to punish ..., that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the

---

[9] It is beyond dispute that a lack of resources cannot excuse MSOP's refusal to acknowledge professional judgment and transfer individuals to less restrictive facilities. *Finney,* 505 F.2d at 201; *see also Matter of Civil Commitment of Kropp,* 895 N.W.2d 647, 652 (Minn. App. 2017) (finding that "the [Commitment Appeal] Panel may grant a reduction in custody even to a 'nonexistent placement')).

alternative purpose assigned to it.'" *Karsjens II* at 1054 (citing *Bell*, 441 U.S. at 538 (citation omitted)). *Bell* states "a restriction is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Bell*, 441 U.S. at 539. Additionally, this Court noted that *Bell* requires the court to consider the totality of the circumstances. *Karsjens II* at 1054 (quoting *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010)).

In *Morris,* this Court noted that "[w]hen considered separately and in isolation, Morris's allegations of unsanitary conditions of the cage, the degree of discomfort experienced by Morris, or the humiliation suffered by Morris may not appear to state a constitutional violation. But Morris did not experience these conditions in isolation."). Likewise, Plaintiffs did not experience each of the numerous deplorable conditions at MSOP in isolation. Their experience must be judged in totality.

Finally, the time that an individual is exposed to harsh conditions is "a critical factor in our analysis [of punitive conditions]," and that "[c]onditions such as a filthy cell that may be tolerable for a few days are intolerably cruel for weeks or months." *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996). Here, Plaintiffs have constantly endured the conditions at MSOP for years, and in some cases, decades. The length of the relentless and overly restrictive conditions magnifies the depths of their

37

punitive nature. What may be an unpleasant inconvenience for an afternoon will become heavy punitive burden over 20 years.

For example, the district court erred in finding that double bunking is considered an inescapable part of the tapestry of Plaintiffs' conditions of confinement and was not punitive. First, it is undisputed that double bunking Class Members can and does put them at risk for unconstitutional violence. *See Martin v. White*, 742 F.2d 469, 474 (8th Cir. 1984) ("Subjecting prisoners to violent attacks or sexual assaults, or constant fear of such violence, shocks modern sensibilities and serves no legitimate penological purpose."). Sadly, such unconstitutional harm has come to fruition. *See Goldhammer v. Rose, et al.*, 11-CV-00852 (JNE/JJK) (April 4, 2011) (recognizing the unconstitutional harm when a committed individual was assaulted by his bunkmate despite both the victim and the assailant warning personnel of an impending sexual assault due in part to double bunking). The conditions alleged by Plaintiff are not limited to discomfort and lack of personal space, but extend to persistent fear of violent attacks from bunkmates. Simply put, Defendants have offered no pro-therapeutic justification for wantonly injecting this fear into a treatment environment. What was made clear by the Rule 706 Experts was that that double bunking was not ideal and can be counter-therapeutic for this population. App. 136; R. Doc. 658, at 50. The fact that it exists at other facilities does not change this conclusion. This Court should treat with skepticism

Defendants' claims that they have an operational need for double occupancy rooms. The evidence in this case has shown that the number of committed individuals at MSOP has ballooned while Defendants have failed to expand facilities to house those individuals. App. 314. The budgetary constraints purported to justify double bunking is entirely a product of Defendants' actions and inactions. That conduct may not be allowed as an excuse to further curb Plaintiffs' fundamental rights. *See Finney,* 505 F.2d at 201.

Likewise, the district court erred in finding that the Behavioral Expectation Report ("BER") policy "strikes an appropriate balance between the legitimate objectives of maintaining institutional security and supporting Clients' therapeutic needs," and was not "arbitrary or purposeless." Add. 32; R. Doc. 1197, at 32. First, to the extent that the district court found that the BER policy "is consistent with common practice at other such facilities," Plaintiffs again note that the ubiquity of a punitive practice does not render that practice non-punitive. But more importantly, the district court failed to properly consider the fact that BERs can delay a Class Member's treatment process, even when the BERs are unrelated to any sexual offense. *See e.g.*, Add. 24; R. Doc 1197, at 24.  Committed individuals can also be moved back in treatment for receiving BERs. *Id.*

Despite this, the district court found that MSOP's BER policy "requires disciplinary actions to be reasonably related to the nature of the behavior and

39

proportional in severity." Add. 33; R. Doc. 1197, at 33. In this, the district court concedes that it believes that further extending an individual's (already indefinite) commitment for minor violations, or violations unrelated to sexual offending, likely by years, is rationally related to and not excessive to achieve legitimate interests. To the contrary, this is exactly the kind of state action that is so excessive in relation to the assigned purpose that a court "permissibly may infer that the purpose of the governmental action is [unconstitutional] punishment." *Bell*, 441 U.S. at 538. Taken alone or as part of the totality of the circumstances, Defendants' use of BERs is unconstitutionally punitive.

Furthermore, the continual delays in treatment progress caused by the "persistent, widespread patterns" and practices of the Defendants add to the punitive conditions of confinement. *See Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 536 (8th Cir. 1999). The evidence at trial made clear that the treatment program at MSOP has changed many times over the years and has resulted in many delays in progression and even regression in treatment for Class Members. These delays have been brought about entirely by decisions made by Defendants. Evidence at trial demonstrated that leadership changes, new executive directors, and re-evaluations of treatment protocols has led many Class Members to be moved back phases, or to completely restart the treatment program. Add. 277; R. Doc. 953, at 4111:1-3; Add. 198; R. Doc. 919, at 55; Add. 242-43; R. Doc. 941, at 1227:21-1228:1, 1228:14-23;

Appellate Case: 22-1459     Page: 46     Date Filed: 06/27/2022 Entry ID: 5171678

Add. 262; R. Doc. 944, at 1967:15-23. Understaffing and poor training has resulted in sporadic and inconsistent treatment. Add. 274; R. Doc. 952, at 3882:3-22. Understaffing can also cause clinicians to have greater caseloads, which affects Class Member treatment progress. Add. 251; R. Doc. 942, at 1517:11-13. This understaffing also results in a failure to provide regular assessments. App. 443; R. Doc. 966, at 34. Without those regular assessments, Defendants have no way of knowing if a Class Member is even mentally ill. Without a diagnosed mental illness, confinement is punitive. *See Revels v. Sanders*, 519 F.3d 734, 742–43 (8th Cir. 2008) (*"once an insanity acquittee has shown the absence of a present mental illness, his continued confinement constitutes 'punishment,' which *Foucha* expressly rejected as a proper basis for the confinement."*). Because completion of treatment is a condition of Class Members confinement, decisions made by Defendants, unrelated to professional judgment, that result in a delay to Class Members' treatment have no rational relationship to any legitimate government interest and are therefore unconstitutionally punitive.

Based on all the evidence presented at trial, Plaintiffs have shown that under the remaining Counts, Defendants' conduct, when considered in its totality, rises to the level of unconstitutional punishment under the *Bell* standard set out by the Eighth Circuit in *Karsjens II*.

41

## V.   The District Court Erred in Dismissing Plaintiffs' Inadequate Medical Care Claims.

In *Karsjens II,* this Court directed that "[o]n remand, the district court is instructed to consider the claim of inadequate medical care under the deliberate indifference standard outlined in *Senty-Haugen*," *Karsjens v. Lourey*, 988 F.3d 1047, 1054 (8th Cir. 2021). To prevail under the *Senty-Haugen* standard, "a plaintiff must show that officials knew about excessive risks to his health but disregarded them, and that their unconstitutional actions in fact caused his injuries." *Id.* at 1052. (citations and quotations omitted).

The district court summarily dismissed this claim, finding "insufficient evidence to conclude that Defendants were ever deliberately indifferent to any specific MSOP Client's serious illness or injury, much less at the policy level or on a widespread basis, or that any alleged indifference caused any actual injury or harm. Add. 39; R. Doc. 1197, at 39 (citing *Senty-Haugen v. Goodno*, 462 F.3d 876, 889-90 (8th Cir. 2006). However, as noted by the 706 Experts, Defendants fail to provide adequate medical treatment for Class members.   As the evidence at trial demonstrated, individuals on the Assisted Living Unit include elderly individuals and others with brittle chronic disorder and ambulatory disabilities. Despite these conditions, there are no nursing or medical staff assigned to the assisted living unit and it is not clear what specialized training, if any, is provided to the security counselors assigned to this unit.  App. 104; R. Doc. 658, at 18.  Additionally, some

42

Class members are confined to wheelchairs or use walkers, some are oxygen tank dependent, and some require dialysis. The 706 Experts raised broad concerns about the treatment of this group. App. 104-05; R. Doc. 658, at 18-19. Those Experts also recognized the overall insufficient resources put into MSOP's medical and psychological treatment of all Class Members. App. 144; R. Doc. 658, at 58.

The district court ignored Plaintiffs' evidence that Defendants, on a widespread basis, do not seek professional medical assistance for various conditions Plaintiffs suffer, which often result in delayed and inadequate medical care.

## CONCLUSION

For all of the reasons described above, the February 23, 2022, Order of the district court should be reversed and judgment entered for Plaintiffs on Counts V, VI, and VII.

Dated: June 27, 2022

*s/Daniel E. Gustafson*
Daniel E. Gustafson (#202241)
Karla M. Gluek (#238399)
David A. Goodwin (#386715)
Anthony J. Stauber (#401093)
**Gustafson Gluek PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
kgluek@gustafsongluek.com
dgoodwin@gustafsongluek.com
tstauber@gustafsongluek.com

*Attorneys for Plaintiffs-Appellants*

43

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 10,266 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 using 14-point Times New Roman.

3.     This brief and addendum have been scanned for viruses and are virus free.

Dated:  June 27, 2022                    *s/Daniel E. Gustafson*
                                             Daniel E. Gustafson

Appellate Case: 22-1459    Page: 50    Date Filed: 06/27/2022 Entry ID: 5171678

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

Dated:  June 27, 2022                    *s/Daniel E. Gustafson*
                                        Daniel E. Gustafson